HOLSTON RIVER ELECTRIC COMPANY v. HYDRO ELECTRIC CORPORATION.

Eastern Section. July 26, 1930.

Cate, Smith, Tate & Long, all of Knoxville, and Margraves & Moneyhun, of Rogersville, for appellant.

Phillips & Hale, of Rogersville, for appellee.

HEISKELL, J. The complainant, Holston River Electric Company, filed the bill in this case on August 17, 1926, against the

Hydro Electric Corporation, seeking to enjoin said defendant from doing business, selling or attempting to sell electrical energy in the town of Rogersville.

Both complainant and defendant are Tennessee corporations, the charter of complainant being obtained on April 5, 1924, and defendant's on February 26, 1925. About 1900 the Rogersville Electric Company incorporated under the laws of this State, obtained a franchise from said town, and the same being about to expire, complainant on the 5th of May, 1926, obtained a franchise from the town of Rogersville, which was approved by the Railroad and Public Utilities Commission of the State on May 10, 1926, and thereupon the complainant acquired and took over the said Rogersville Electric Company which had been doing business in said town since about 1900.

The defendant is the successor in title. of the Hydro Electric Power Co. organized in 1913, which established an electrical business in Rogersville. On August 30, 1918, this company leased to the Rogersville Electric Company, predecessor to complainant, all its properties in said town for a period of five years with the option to extend same for five years more.

In 1923 the Hydro Electric Power Co. went into voluntary bankruptcy and its assets being sold by the trustee appointed, they were bought by G. D. Hale who transferred same to defendant company after its incorporation on February 2, 1925. On June 1, 1926, the defendant obtained a franchise from the Town of Rogersville, but the Railroad and Utilities Commission refused to approve it. The defendant insisting on carrying on business in Rogersville in competition with complainant, this suit was brought and the court granted an injunction as prayed.

The pleadings alone take up 200 pages in this record. They consist of bill, amended bills, answers, cross-bills, amendments thereto and demurrers. A riot of confusion. We will undertake to pick out the questions at issue, treating the pleadings as having served their purpose when the issues are made up.

The brief for defendant contains a very good abbreviation of the decree, to-wit:

"1. That the complainant was authorized to engage in the business of transmitting and selling electricity in the town of Rogersville, and that it had the right at the time it filed its bill in the case. to enjoin the defendant from engaging in a similar business in said town.

"2. That the complainant was not estopped to question the validity of the franchise granted by the town of Rogersville to the defendant authorizing it to engage in business in the town.

"3. That George D. Hale, who upon his application had been made a cross-complainant in the case, was not the owner of the franchise granted by the town of Rogersville to Vance G. Hale in 1913, either by transfer or inheritance, and that the defendant Hydro Electric Corporation was not the owner of that franchise; consequently that it had no authority, either under that franchise or the franchise of June, 1926 (not. approved by the Utilities Commission) to engage in the business of selling and transmitting electricity in the town of Rogersville.

"4. That the defendant has no franchise authorizing it to engage in business in the town of Rogersville under and by virtue of its claimed franchise through the charter of the Hydro Electric Power Company; nor has it the right to engage in the business of transmitting and selling electricity in the town of Rogersville by virtue of its ownership of the leased properties of the Hydro Electric Company.

"5. The court, at the request of defendants, specifically found that the transmission and distribution lines situated within the corporate limits of the town of Rogersville covered by the lease of the Hydro Electric Power Co. to the Rogersville Electric Co. had been constructed by the Hydro Electric Power Company in 1913, and thereafter maintained and used by it until the execution of said lease in 1918; that such construction with respect to the location of lines of poles and wires on streets was under and pursuant to the supervision of the Chairman of the Street Committee of the town of Rogersville.

"6. The court found the facts with respect to the organization of the Hydro Electric Power Company; the construction of its lines in Rogersville and adjacent territory; the lease of such lines to the Rogersville Electric Company for the period of five years, with option of renewal for an additional like period; that the properties were described in the lease and the inventory made pursuant thereto; that upon the bankruptcy of the Hydro Electric Power Company the properties were sold by the trustee in Bankruptcy to G. D. Hale; that thereafter defendant, Hydro Electric Corporation was chartered on the 29th day of February, 1925, and Hale conveyed all the properties of the Hydro Electric Power Company, with an exception noted, to the defendant Hydro Electric Corporation; that the lease of 1918 was duly transferred to the complainant Holston River Electric Company and was continued in existence by it to the 30th day of August, 1928, the Holston River Co. assuming all the obligations of the Rogersville Electric Power Company under the lease.

"7. That by virtue of the conveyance to it by G. D. Hale of the properties of the Hydro Electric Power Company acquired

by him through bankruptcy, the defendant Hydro Electric Corporation became the owner of the leased properties, with the noted exception (the line into Burem), with all the rights of the Hydro Electric Power Company therein; and that the cross-complainant is entitled to enforce its rights to said leased property against the Holston River Electric Company and is not estopped or prevented from so doing by the defenses interposed by the Holston River Electric Company, to-wit: that said lease was not approved by the municipal authorities of the town of Rogersville; that the transfer tax imposed by statute had not been paid; that the conveyance or the transfer to Hale and by Hale to the cross-complainant had not been approved by the Utilities Commission; and that the said Hydro Electric Corporation had not paid the privilege tax imposed upon it by the statutes of Tennessee.

"8. That G. D. Hale in his conveyance of the properties of the Hydro Electric Power Company to the Hydro Electric Corporation had reserved one line of that company, from Lyons' gate into Burem's Bend. By amendment, he had sued for that line. The court held that he was the owner of that line and entitled to all the rights in regard thereto.

"9. That neither of the defendants and cross-complainants (Hale and Hydro Electric Corporation) is estopped to maintain such rights as they or either of them may have in and to the leased property against the Holston River Electric Company.

"10. The court ordered the cause referred to the Master for inquiry as to the condition of the lines of the Hydro Electric Power Company at the time the lease of 1918 was executed and as to the present condition of those lines; also an inquiry with respect to what part of the properties leased were tendered in return by the complainant Holston River Electric Company.

"11. The court further decreed "that the defendant Hydro Electric Corporation has no right to do and carry on its business in the town of Rogersville in competition with the complainant Holston River Electric Company, either as the owner of the properties of the old Hydro Electric Power Company or under the franchise of 1926, and has no right to render services to persons, individuals, companies or corporations living within or doing business within the town of Rogersville . . .," and further adjudged that "said defendant Hydro Electric Corporation is now perpetually enjoined from continuing to do business in the town of Rogersville with any persons, firms or corporations or for any purpose whatsoever."

"12. With respect to the lease of 1918 the court held that the lessee, the Rogersville Electric Company, at its option had

the right to continue the same for a period of ten years from the date of the lease, consequently that the lease did not expire until August 30, 1928; held, also, that the contention of the defendant and cross-complainant that the lease was modified as to the time the same was to run by an agreement between Hale and Kenner was not supported by the proof.

"13. The court also found that the defendant had from May 1, 1926, date upon which Hale claimed the lease had terminated, tendered monthly rentals of $75 per month to the date of the termination of the lease, the receipt of which had been refused by Hale and the Hydro Electric Corporation, his assignee, upon the ground that the lease had terminated and the amount of those rentals to date of termination of lease was the sum of $2100.

"Broad appeals were prayed from the decree by all parties and were perfected."

It will be seen the main questions are:

1. Is the complainant entitled to carry on its business of manufacturing and selling electric energy in the town of Rogersville to the exclusion of the defendant corporation, or is the latter entitled to compete in said business in said town? The chancellor decided this contention in favor of complainant.

2. Whether defendant, Hydro Electric Corporation, is entitled, by these proceedings, and in this case, to recover of the complainant, Holston River Electric Company, certain properties, consisting of transmission or pole lines, and various kinds of machinery, formerly belonging, as claimed, to the Hydro Electric Power Company, or the value of such property.

The question the Chancellor answered in the affirmative, holding and decreeing that the defendant, Hydro Electric Corporation, is the owner of said property, that the defenses interposed by the complainant herein to said cross-bills, to be hereinafter more particularly referred to, were not sound and ordered a reference to ascertain the nature, kind and value of said property.

The first assignment of error by the defendant is that the court should not have overruled the demurrer of the town of Rogersville to the amended and supplemental bill of complainant. In the first place the town does not appeal and in the second place it is conceded by counsel for defendant that since the Act of 1919 the approval of the Utilities Commission is necessary to make the grant of the town effective. About all there is in this amended and supplemental bill not contained in the other pleadings is that an injunction is sought and obtained restraining the town from granting any further privilege or concession to defendant unless and until defendant shall obtain from the Utilities Commission the approval of the franchise granted to defendant on June 1, 1926. We cannot see that overruling the demurrer of the town is now material.

562

The second assignment raises the question that the complainant is estopped to assert a right to exclude defendant from said town and that the court erred in refusing to so hold. The contention is that when complainant was before the town council of Rogersville on May 5, 1926, seeking a franchise that counsel for defendant appeared and opposed the granting of same, and that Squire Ogden, an attorney representing complainant, stated that if the franchise applied for was granted to complainant, he would not object to a similar franchise being granted to defendant. In answer to this, it is denied that Ogden represented the complainant and it is denied that Ogden made the statement. There is a conflict of evidence on these contentions, but they are not material for admitting that Ogden represented complainant and that he made the statement, still there is no estoppel as to complainant, because when defendant appeared on June 1, 1926, before the council and applied for a franchise, it was granted without opposition, but the Utilities Commission refused to approve it. It is not insisted that Ogden's statement went beyond the action of the town council. The Utilities Commission on May 10th approved the franchise of complainant granted by the town on May 5, 1926, but refused to approve the franchise granted by the town to defendant on June 1, 1926, saying:

"It is not disputed, but on the contrary is admitted, that on June 1, 1926, when the franchise was granted to petitioner, the Holston River Electric Company was operating in the said town of Rogersville, and was rendering satisfactory, sufficient and adequate service in said town, and that the service rendered by the Holston River Electric Company has at all times since that time been satisfactory, efficient and adequate. It further appears that the stock ownership of the Holston River Electric Company changed hands May 1, 1926, when its present management assumed control of the said company, and that said company under its said management is able and willing to continue satisfactory and adequate service to the public, and that its source of supply of electrical energy is more than sufficient to enable it to meet the public needs, and such future demands as many occur.

"The Commission finds that the operation of electric distribution system in said Town by the said Hydro Electric Corporation concurrently with the Holston River Electric Company is not necessary and proper for the public convenience, but that such operation would result in a harmful and wasteful duplication of facilities, that the poles and wires of the Holston River Electric Company are already on the streets of said Town, and the operation by the Hydro Electric Corporation would mean two sets of poles and wires for electric service

upon the said streets, would result in a duplication of service and would eventually result in an increase in electric rates in said town; the Commission therefore finds and is of the opinion that the application of the Hydro Electric Corporation for the approval of the franchise granted to it by the Town of Rogersville June 1, 1926, should not be approved, nor should an order be entered requiring the Holston River Electric Company to furnish electrical energy to said Hydro Electric Corporation.

"It is therefore ordered by the Commission, that the application for the approval of the franchise granted to the Hydro Electric Corporation June 1, 1926, by the Town of Rogersville, be and the same is hereby denied, disapproved, and the certificate of public convenience and necessity is hereby denied.

"IT IS FURTHER ORDERED that the application of the Hydro Electric Corporation requiring the Holston River Elecectric Company to furnish said Hydro Electric Corporation electrical energy, be and the same is hereby denied."

It is admitted that W. B. Hale, attorney for defendant opposing Ogden, knew that it was necessary to obtain the approval of the Utilities Commission to give validity to the grant of franchise by the town. This was understood by all parties. Ogden's statement could not be taken to refer to the action of the Commission. Complainant was seeking a franchise from the town. It had to obtain the approval of the Utilities Commission. All it could agree to was that the town might grant another franchise to defendant. It could not bind the Commission.

Defendant then has a group of assignments under which if we understand them, the contention is that irrespective of any approval by the Utilities Commission and of any estoppel of complainant, the defendant is still entitled to a franchise and to the right to carry on business in the town of Rogersville just as well as the complainant. The facts and arguments relied on to support this contention are vague and indefinite. It is claimed that the charter of the defendant's predecessor, the Hydro Electric Power Company was a franchise in itself. If this were true, why should any corporation worry about obtaining a franchise from a municipality? If the charter was sufficient and inured to the benefit of the defendant, why bother about the application of June 1, 1926, and the approval of the Utilities Commission and the estoppel of complainant? Then after the charter of the Hydro Electric Power Co. it is claimed that in 1913 Vance G. Hale obtained a franchise from the town of Rogersville and in pursuance of the grant, constructed certain equipment in the town, poles, wires and transmission properties, and transferred same to the Hydro Electric Power Com-

pany. There is no written conveyance but it is claimed that there was a parol transfer. Then it is urged that if the defendant's predecessor did not take a franchise from Vance Hale, that he was killed in 1917 and his father, George D. Hale took by inheritance from said Vance Hale and that all the interest acquired by George D. Hale in this way as well as all acquired by purchase at the bankrupt sale of the old Hydro Electric Power Company has been acquired by the defendant corporation, and at last by amendment, objected to by complainant, George D. Hale is brought in as a cross-complainant to claim for himself in the alternative that defendant's claim is not allowed.

In answer to all this, complainant says that if Vance G. Hale had transferred his franchise to the Hydro Electric Power Co. by parol, it would have been within the statute of frauds and that upon the death of Vance G. Hale, unmarried and intestate, his father, G. D. Hale did not take said franchise by inheritance. If we understand counsel for defendant, it is now conceded that in so far as the franchise of Vance G. Hale had been used in constructing poles, wires and transmission equipment, it had become real property, but in so far as not used, it was personalty and did pass to George D. Hale.

There is no sufficient evidence to warrant the holding that Vance G. Hale ever transferred his franchise to the Hydro Electric Power Co. The most we can make out of the testimony, when sifted by cross-examination, is that there was a rumor of such transfer. The franchise was for a period of twenty-five years and granted the right to erect poles, etc., provided said system should·be installed within one year. Defendant insists that this was complied with by Vance Hale in that all that part of the town where such equipment could be used was covered within a year from the date April 5, 1913, and then it is insisted that all this passed by assignment of Vance G. Hale and the rest of the franchise passed to Geo. D. Hale by inheritance and from him to the defendant. All this is evidently an after-thought, otherwise defendant would not have needed to insist on the franchise of June 1, 1926, and its approval by the Utilities Commission. When this approval was denied, the defendant began to think back to its charter and the franchise of Vance G. Hale.

The Hydro Power Company was in existence when Vance Hale obtained his franchise. If the company was to have this franchise, why was it not granted to the company direct and besides when Vance Hale by deed of December 15, 1913, conveyed to the said company certain rights and properties he said nothing about this franchise.

We understand counsel for defendant to admit that poles, wires, etc. put up in the streets under a grant of permission, constitute an easement which is an interest in real property which cannot be trans-

ferred except in writing, but whether admitted or not, it is well settled. Curtis on Law of Electricity, Sec. 198, pp. 300-301; Morristown v. E. T. Telephone Co., 115 Fed., 304, 307; Sou. Tel. & Tel. Co. v. Mobile, 162 Fed., 523; Cumberland Tel. & Tel. v. Evansville, 127 Fed., 187; N. Y. Electric Lines Cases, 235 U. S., 192.

Such interests in land descend to heirs at law and not to the personal representatives. Matthews v. Crofford, 2 Thompson, 556; Alexander v. Miller, 7 Heisk., 82.

To the transfer of such a right, clearly the Statute of Frauds applies. Washburn on Easements & Servitudes, pp. 6 & 24; Jones on Easements, p. 64; Long v. Mayberry, 96 Tenn., 378, 382.

Finally it is contended for complainant that if the Hydro Electric Power Co. ever had a franchise it was abandoned or lost by non-user. It leased its properties on August 30, 1918, to the Rogersville Electric Company and said nothing in its lease about a franchise. It then goes into bankruptcy and in June, 1926, the successor, the present defendant, applied for a franchise and petitioned the Utilities Commission to approve it. One cannot blame the advisers of defendant for concluding that defendant had no franchise in June, 1926, and we cannot say the Chancellor erred in so holding.

In this connection counsel for defendant say that complainant cannot be heard to contend that there has been a forfeiture or abandonment of a franchise or want of authority to act on the part of defendant until this has been declared in a suit by the grantor or sovereign. This may be the rule where the party making the question has no interest more than any other citizen, but it does not apply where as in this case, complainant has a special interest or right involved, to which unauthorized competition would be ruinous.

Complainant has filed numerous assignments of error, but we think it is material to notice only two contentions. It is insisted that it was error to allow an amended cross-bill to be filed by which G. D. Dale was made a cross-complainant and set up his claim. We see no error in this. It was in pursuance of the policy of allowing all parties interested in the subject-matter of the suit to come in in order that there may be an end of litigation. Besides, the Chancellor held against the contention of G. D. Hale except on the one point in which he decreed against the complainant in favor of the cross-complainant, the Hydro Electric Corporation, that is that complainant could be required to return or account for the properties received from the Hydro Electric Power Company under the lease of August 30, 1918. This is assigned as error and is the main contention of the complainant on its appeal. Complainant insists that it tendered back all said properties to the defendant and when the tender was refused and rent was refused, the rent was paid into court. So that complainant recognized the validity of the lease, but

it is now contended that said lease was void because not ratified at the time, by the Mayor and Aldermen of the town, and because of the failure of cross-complainant to pay the privilege and transfer tax imposed by statute in regard to said lease, and also because the deeds from the trustee in bankruptcy to G. D. Hale and from Hale to defendant, were not approved by the Utilities Commission, therefore, for these reasons the cross-complainants cannot recover under said lease of August 30, 1918, the properties now held by the complainant, by virtue of said lease.

These several reasons are assigned by complainant why the lease by the Hydro Electric Power Co. of August 30, 1918, to the Rogersville Electric Company was void, and therefore complainant cannot be required to account for the property received and still held by virtue of said lease. These contentions of complainant if they succeed, must succeed not because of any sympathy the court has with the claim of complainant, but merely because the defendant by reason of violation of law has put itself beyond the power of the court to decree it relief.

One reason given is that when the lease was made, the privilege tax required by law was not paid. The act in force at that time in 1918 was the Act of 1915, Ch. 101, Sec. 10, and this required the lessee to pay the tax. The complainant, the lessee, cannot refuse to pay the tax and then claim that the lease is void as against the lessor.

Another contention is that the lease was invalid because not approved by the municipal authorities of the town of Rogersville. After this suit was brought the authorities of the town did on April 12, 1928, approve said lease of August 30, 1918. . Complainant objected to the introduction of this evidence and the Chancellor admitted it. If complainant had repudiated the lease and the lessor were suing for rent, it might be a valid objection to say the town cannot now ratify the lease and make it retroactive in order to bind the complainant. But when the only effect is to meet the technical objection of complainant to being ordered to turn over defendant's property to it, complainant cannot be heard to object to this action of the town. For the purpose of meeting the objection of complainant to turning over property to which it had no right, the town could approve the lease at any time.

Then it is contended that defendant cannot maintain its cross-bill to recover its leased properties, because when G. D. Hale purchased at bankrupt sale the properties of the Hydro Electric Power Company, the approval of the Utilities Commission was not obtained. It is true this was after the Act of 1919, but we do not think it was intended that this provision of said act should apply to judicial sales. Suppose the properties of a utilities corporation were sold

out under decree of the Chancery Court and sale confirmed by the court, could the Utilities Commission defeat and destroy the sale by refusing to approve and ratify it? Such a result, we think, would be unconstitutional and it is not within the purpose of the act. There may be more show of reason in the contention that when G. D. Hale transferred to defendant the properties purchased at bankrupt sale, that this should have been approved by the Commission, but we do not think this comes within the meaning of the act. The language of the act is: "No lease of its property rights or franchises by any such public utility and no merger or consolidation of its property rights or franchises by any such public utility with the property rights and franchises of any other such public utility of like character shall be valid until approved by the Commission. . . ." This was not a lease, it was not a merger. It was simply a means of transferring the properties of the defunct corporation to a successor. The purpose of the Act of 1919 is shown by what followed. When the new corporation, the defendant, sought to act in competition with complainant, it was denied the right to do so by the Commission. It should be noticed in this connection that the defendant in its petition to the Utilities Commission filed in September, 1926, asked to have the transfer from G. D. Hale to defendant in 1925 approved, but the Commission did not pass upon this part of the petition. Presumably it considered this unnecessary as it did pass on and refuse to approve the franchise of June 1, 1926. We can see no reason for failure to approve the transfer from G. D. Hale, if such approval was necessary. If there is any doubt as to such approval being within the purpose of the act, under all the facts bearing on this question, defendant is entitled to the presumption that the Commission did not consider that this transfer required approval. Defendant did all it could do in this regard and is entitled to that view of the contention which does justice and not injustice. As shown by the authorities cited, the refusal to allow a litigant who has failed to comply with a plain law to assert a claim dependent upon such compliance is in the nature of a punishment. Upon this record the conscience of a court is not moved to punish the cross-complainant or even to refuse to assist it. In addition to all this, if the transfer of G. D. Hale was not operative, then he is still the owner of the properties purchased at the bankrupt sale and he is an alternative cross-complainant and could claim the properties.

The lease contains this provision:

"All physical property covered by this lease shall be maintained and returned to Lessor at final termination of this lease in as good general condition as received by the Lessee; except

natural wear and tear, depreciation, and any other condition . for which it (the lessee) is in no way responsible.''

The reason given by defendant for refusing the tender of complainant is that the offer to return did not include all the properties to which the defendant was entitled. The Chancellor ordered a reference to determine just what property the defendant was entitled to recover under its cross-bill.

All assignments of error are overruled and the decree is affirmed. The costs of the appeal will be paid two-thirds by defendant and one-third by complainant.

Owen and Senter, JJ., concur.