## HOLSTON RIVER ELECTRIC CO. v. HYDRO ELECTRIC CORPORATION et al.—66 S. W. (2d) 217.

Eastern Section. March 27, 1933.

Petition for Certiorari denied by Supreme Court, July 19, 1933.

Phillips & Hale, of Rogersville, for appellant.
Cates, Smith & Long, of Knoxville, for appellee.

CASSELL, Sp. J. Complainant, Holston River Electric Company, filed a bill in the chancery court of Hawkins county against Hydro Electric Corporation, Hawkins County Creamery, and F. F. and A. A. Hale, to enforce a decree entered by the Hydro Electric Corporation in cause No. 3107, which decree was rendered July 20, 1929, by the chancery court of Hawkins county. In this decree it was

adjudged that the Holston River Electric Company had the lawful right and authority to carry on its business in the town of Rogersville, Hawkins county, Tennessee, and defendant Hydro Electric Corporation had no right to carry on its business in said town or to secure and render service "to persons, individuals, companies or corporations, lying within or doing business within said town of Rogersville." This decree was appealed to the Court of Appeals for the Eastern Division of Tennessee (12 Tenn. App., 556), and affirmed, and later on the decree of the Court of Appeals was affirmed by the Supreme Court of Tennessee.

It is alleged in the bill filed herein that defendant, Hawkins County Creamery, which company has a plant located in the town of Rogersville, Tennessee, had entered into an agreement with the Hydro Electric Corporation to the effect that the Hydro Electric Corporation, from its transmission line without the corporation limits of Rogersville, would furnish electrical energy to the plant and property of the creamery company within said town. This energy was to be transmitted over a line of wires built or furnished by the creamery company from its plant in said town to a point outside of the city limits where the electrical energy was furnished by the defendant Hydro Electric Corporation, and transmitted over the wires of the creamery company to its own business in said town. It is alleged that both of said corporations are corporations chartered under the laws of the state of Tennessee for the purpose of transmitting and distributing electrical energy. It is further alleged that the defendants Hale are large stockholders of the creamery company and of the Hydro Electric Corporation, and, in fact, are in control of both corporate defendants.

An injunction was issued against the Hydro Electric Corporation enjoining them from furnishing electrical energy to the creamery over said line, and the creamery was enjoined from using same.

All of the defendants filed answers, which are substantially the same. We do not deem it necessary to do more than state the substance of the answers of the defendants of the various companies. It is admitted that the complainant has a franchise to transmit energy and do business in the town of Rogersville, and that the Hydro Electric Corporation is not entitled to engage in the business of transmitting and selling electricity within the incorporate limits of the town of Rogersville, and that it stands enjoined by the defendants from engaging in business within said incorporated limits. The defendant Hydro Electric Corporation, however, denies that such an injunction goes to the extent of depriving it of its right to engage in business with the citizens of the town of Rogersville or to make contracts with such citizens if thereby it does not engage in the business of transmitting and selling electricity within the town of Rogersville. This defendant, however, states that it is engaged in

transmission by high powered lines and sale of electrical energy in Greene and Hawkins counties, and that it has a franchise duly approved by the Public Utilities Commission of the state of Tennessee authorizing it to use the streets and highways of said two counties (with certain exceptions) for the transmission and sale of its products. It states that it has a high-powered line of transmission running through the town of Rogersville over to several various communities in Hawkins county outside of the town of Rogersville. It is admitted that the Hawkins County Creamery is a corporation engaged in a business of manufacturing butter and milk and selling ice, and that in the manufacture and sale of said articles it is necessary to use electricity for operating its machinery. The creamery plant being located within the said corporate limits, the Hydro Electric Corporation was unable to sell it at its plant, but the contract agreed upon with the defendant creamery company was that, if it would acquire its own private line from its plant in Rogersville to a connection with the high-powered line of the Hydro Electric Corporation outside of the city limits, the Hydro Electric Corporation would furnish to it the electricity needed in its operations. As a result of these negotiations, a written contract was entered into between the Hydro Electric Corporation and the creamery company, which contract speaks for itself, and which is copied herein as a part of this opinion:

"Contract Between Hydro Electric Corporation of the one part, hereinafter called the Electric Company, and the Hawkins County Creamery of the other part, hereinafter called the Creamery, both Corporations, witnesseth:—

"The Creamery is located in the corporation limits of the Town of Rogersville, and in the operation of its plant uses large quantities of electrical energy, which it desires to purchase from the Electric Company.

"The Electric Company is the owner and operates high powered electric line in Hawkins County and adjoining territory, but is not permitted to enter and serve patrons in the town of Rogersville, for want of an approved franchise authorizing it to do so.

"In consideration of the premises the Electric Company agree that if the Creamery will construct and maintain their own private line from its plant within the corporation limit of the town of Rogersville to a connection with the high powered transmission line of the Electric Company where the same crosses highway N 70 about ¼ mile south and west of the corporation limits of the Town of Rogersville and without the same, that it, the Electric Company will there sell and deliver to the Creamery the electrical energy necessary for its use in the operation of its plant, the same to be there metered to the Creamery and to be paid for monthly at the rate or rates now or hereafter applying to the country lines of the

Electric Company as now filed or as may be hereafter filed with and approved by the Public Utilities Commission of the State.

"The Electric Company shall be at no expense in either the construction or the maintenance of the private transmission line of the Creamery at the point mentioned; but it shall furnish and maintain at the connection aforesaid the necessary transformers and meters needed to reduce the current flowing over the Electric Company lines to only 2300 volts and meters the same to the Creamery at that voltage.

"The Creamery agrees that the energy herein agreed to be supplied to it by the Electric Company is for its own exclusive use in the operation of its Creamery and ice-plant, and that it will not sell nor undertake to sell any of the energy herein agreed to be delivered to it by the Electric Company to any third party either within or without the corporation limits of the Town of Rogersville.

"This contract shall continue in force until the one or the other party shall have given six months notice of its intention to terminate the same.

"In witness of all which the parties respectively have caused their corporate names to be signed and seal attached on this August 8th, 1931. Executed in duplicate.

"Hydro Electric Corporation
"Albert Lyons, President
"Hawkins County Creamery.
"[Seal.]                    K. B. Watterson, President."

Defendant further states under its said contract the defendant Hydro Electric Corporation has no connection with the private line of the creamery company, no ownership thereof, and no control thereover. This defendant denies that the execution and carrying out of said contract is a violation of the injunction granted against it at the instance of the Holston River Electric Company or that same is in violation of any vested right of the Holston River Electric Company. Defendant denies that complainant is entitled to have the carrying out of the contract enjoined for any reason, notwithstanding the fact that it has no valid franchise authorizing it to use the streets of said town in the transmission of said electricity. The defendant further answered concerning business outside of the town of Rogersville, and it avers that it has a right to sell and deliver to any person that may apply for same without the corporate limits of the town of Rogersville. Defendant further answers and says he has a right to contract which is granted under article 1, section 8, of the Constitution of Tennessee, and under that article it has a right to sell its electricity. Defendant says under the former decree it is only deprived of the right of transmitting electricity over the streets of Rogersville and selling same direct from wires thereover and thereunder.

As to the ownership of defendants F. F. and A. A. Hale in the stock of the Hydro Electric Company and the creamery company, as alleged in the bill, defendant is informed that this is probably true. But for this relationship, the contract between the two parties might never have been entered into, but defendant says that, although there is a joint ownership of part of the stockholders of each company in the stock of the other company, nevertheless the contract above referred to is a valid contract. It is further alleged that in carrying out the provisions of said contract defendant is not violating any constitutional right of the complainant, and that complainant is not entitled to any injunction which it seeks in the bill. Defendant further alleges that, if said relief were granted, there would be a great monopoly in the electrical business in the town of Rogersville, and it would deprive any inhabitant of his right to buy electricity outside of the town and transport it over his own line into the town, all of which would be a violation of article 1, section 22, of the Constitution of Tennessee.

The answer of the two Hale brothers is substantially the same as that of the defendant above set out, except that, as the owners of the controlling interest of the business of the Hawkins County Creamery, it was necessary to find a cheaper power than that furnished by the Holston River Electric Company, if the creamery were going to continue in business, and it was alleged that they acquired a private right of way from the location of their creamery within the limits of the town of Rogersville to a point one-fourth mile southwest of the city limits of said town for the purpose and intention of constructing its own private line from its plant to the plant of the Hydro Electric Corporation outside of the town of Rogersville and purchasing electricity from the Hydro Electric Corporation. The defendants deny that the contract set out above in any way violates the injunction granted the complainants in the original suit, and insist that they have a right to carry out said contract with the Hydro Electric Corporation. The answer of the creamery is practically to the same effect.

So it is that the issue in this case reduces itself to the proposition of whether or not the contract entered into between the Hydro Electric Corporation and the Hawkins County Creamery and the carrying out of the obligations thereunder is in violation of the injunction heretofore referred to. If it is, the injunction issued should be made perpetual; if it is not, it should not be continued in force.

The chancery court decreed in favor of the respondents, dismissed complainant's bill, and denied the right of the complainant to the injunction sought.

It would seem that, before the issues in this case can be decided, it is necessary to look into the former litigation between substan-

tially the same parties in order that we may see what adjudications of the court were made in said former case:

"In May, 1926, complainant was granted a franchise by the Town of Rogersville authorizing it to do business therein and to occupy the streets and public places with its poles, transmission and distribution wires, which franchise was duly approved by the Railroad and Public Utilities Commission of the State of Tennessee—which Commission granted to complainant a certificate of convenience and necessity to do business in said town and serve it and the inhabitants thereof with electrical energy; and under the authority so conferred upon it, complainant has been engaged in carrying on its business in said town and serving the people thereof with electrical energy at rates approved by said Commission and against which no complaint had been made by the inhabitants of said Town; and that complainant is able and willing to continue such service."

It would seem that about June 1, 1926, while the Holston River Electric Company was serving the town and its inhabitants with electrical energy, an effort was made by the Hydro Electric Corporation to get the authorities of the town of Rogersville to grant it a franchise to do business in the town and to use the streets and alleys, but upon a hearing before the Railroad and Public Utilities Commission of the State of Tennessee, upon the application of the Hydro Electric Corporation, the commission refused to approve any such franchise, and denied the Hydro Electric Corporation the right to do business in said town, and refused to grant a certificate of "public convenience and necessity" therefor. Thereupon the suit brought by the Holston River Electric Company against the Hydro Electric Corporation et al. to enjoin said corporation from attempting to do business unlawfully in said town of Rogersville was instituted, and upon a final hearing in the chancery court of said cause, known as No. 3107, upon the rule docket of said court, a permanent injunction was granted complainant Holston River Electric Company against said Hydro Electric Corporation perpetually enjoining it from doing business in said town, and a decree of the chancery court upon appeal to the Court of Appeals (12 Tenn. App., 556) and Supreme Court was affirmed.

"The defendant Hawkins County Creamery was, during the aforesaid litigation, a customer of defendant Hydro Electric Corporation, but after the final decree hereinbefore referred to in said cause No. 3107, said defendant Creamery became a patron of complainant and has been served by it at reasonable rates—in fact, the same rates which had been charged said Creamery by the defendant corporation, and, as hereinbefore stated, the defendant A. A. Hale is the active and executive officer of both corporations and it was he that devised the plan through and by which the defendants are attempting to evade the force and effect of the permanent and perpetual

injunction against the defendant Hydro Electric Corporation from doing business within said town and/or rendering service to persons, individuals, companies or corporations doing business within said Town of Rogersville.

"Said plan as hereinbefore stated involved the building of a line of wires to carry electrical energy from a point outside of the limits of said Town connecting with the main transmission line of defendant corporation, over some private properties and over or under streets of said Town, and through and by said connecting wires and/or transmission line, to furnish energy to defendant Creamery for the operation of its business in said Town."

In addition to the facts set out in the pleadings and as detailed above, it is substantially agreed by the parties that the new and connecting transmission line referred to in the contract between the Hydro Electric Corporation and the Creamery crossed over private property over which it was claimed to have secured a right of way, and this line crossed one of the public streets of the town, particularly Armstrong avenue.

"The Charter of defendant Creamery provides for a capital stock of $20,000, but of said authorized capital stock only stock of the par value of $9000 has been subscribed, of which defendant A. A. Hale claims to own $5000 of said subscribed stock.

"Defendant A. A. Hale admitted that defendant Creamery was paying to complainant only 3 cents per K. W., which was the same rate it paid to defendant Hydro Electric Corporation before it was ousted from the Town of Rogersville."

We have had access to volume 12, Tennessee Appeals Reports (page 556), where the case of Holston River Electric Company v. Hydro Electric Corporation et al., heretofore referred to in this opinion, is reported, and we copy from the opinion in this case such portions as reflect light upon this case. One of the most important questions decided in this case was as follows:

"Is the complainant entitled to carry on its business of manufacturing and selling electric energy in the town of Rogersville to the exclusion of the defendant corporation, or is the latter entitled to compete in said business in said town? The chancellor decided this contention in favor of complainant."

Upon that opinion, and as a result of the same, a decree was entered which is found in the record in this case, and we copy so much thereof as is pertinent to the questions involved here:

"That the complainant Holston River Electric Company is a corporation duly chartered, organized and existing under the laws of Tennessee, for the purpose, among others, of generating, distributing and selling electrical energy, and that it is the owner of a franchise granted by the municipal authorities of the Town of Rogersville, on May 5, 1926, authorizing it to use and granting it a franchise in the

streets and public thoroughfares of said town of Rogersville, which said franchise was duly approved by the Railroad and Public Utilities Commission of the State of Tennessee on the 10th day of May, 1926, and that thereafter said complainant was lawfully carrying on its business in Rogersville and was authorized and had the right to carry on its business in the town of Rogersville and to use the streets and public thoroughfares of the said town in connection with its business and for the purpose of erecting thereon its transmission and distribution lines of poles and wires, and that at the time it filed its bill in this case it had the right to enjoin and inhibit the defendant from operating or attempting to operate a similar business in the Town of Rogersville in connection therewith:

"That said complainant is not estopped to enforce the right conferred upon and vested in it by said Town of Rogersville and by the order of the Railroad and Public Utilities Commission and all the rights conferred upon it by the statutes of this state, and is not estopped to question the validity of a similar franchise later granted to the defendant and is not estopped to enjoin the defendant Hydro Electric Corporation from doing business in said Town of Rogersville, because said defendant corporation is without authority or right to do business in, or to use the streets of, said town.

"That G. D. Hale, upon his application made a co-complainant with the defendant Hydro Electric Corporation, and joining in the cross-bill of said Hydro Electric Corporation, did not become and is not the owner of the franchise granted to Vance G. Hale by the Town of Rogersville on April 5, 1913, either by transfer or inheritance (for the reason stated in the opinion of the court) and that the defendant Hydro Electric Corporation is not the owner of said franchise granting to said Vance G. Hale and has no authority either under said franchise or the franchise of June 1, 1926, attempted to be granted to it by the Town of Rogersville, but approval of which was denied and refused by the Railroad and Public Utilities Commission of Tennessee, to use for any purpose the streets and public thoroughfares of the Town of Rogersville, or to carry on its business in said town.

"That the defendant Hydro Electric Corporation has no franchise in, upon or to the streets and public thoroughfares of the Town of Rogersville under and by virtue of its claimed franchise thru the charter of the . . . Hydro Electric Power Company granted under the Acts of the General Assembly of Tennessee of 1909, chapter 127; nor has it the right to engage in the business of distributing and selling electrical energy in the Town of Rogersville by virtue of its ownership of the leased property of the bankrupt corporation Hydro Electric Power Co., as herein next adjudged."

These are all the pertinent facts, so far as we can glean from the

record, which are necessary for us to recite in order to arrive at a conclusion.

The assignments of error are as follows:

"The court erred in dismissing complainant's bill and denying to it the relief therein sought, viz., a decree enjoining defendant Hydro Electric Corporation from serving electrical energy to the plant and business of defendant Creamery within the Town of Rogersville for the operation of its business therein, because:

"(1) It has been adjudged and decreed in the case of complainant Holston River Electric Company v. defendant Hydro Electric Corporation, No. 3107 upon the Rule Docket of the Chancery Court of Hawkins County, as hereinbefore shown, that complainant is entitled to serve the Town of Rogersville and the inhabitants thereof with electrical energy for all required or needful purposes, and that it is fully equipped and prepared for such service at reasonable rates, is not denied, but in effect and law admitted by the defendants.

"(2) In said cause No. 3107 it was adjudged and decreed as hereinbefore shown, 'that the defendant Hydro Electric Corporation, has no right to carry on its business in the Town of Rogersville in competition with the complainant Holston River Electric Company . . . and has no right to secure and render service to persons, individuals or corporations living within, or doing business within, the Town of Rogersville' and for the reason that said defendant Hydro Electric Corporation had no right to secure or render service to any one living within or doing business within said Town of Rogersville, said defendant was enjoined from doing business in said Town, with any person, firm or corporation or for any purpose whatsoever.

"(3) That the contract or agreement between the defendant corporations, controlled and operated by practically the same stockholders and executive officers, is a fraudulent device and scheme to evade the force and effect of said decree of July 20, 1929, and an attempt by said defendant corporations unlawfully to serve defendant Creamery with electrical energy at its plant and business 'within the Town of Rogersville,' and is an unlawful attempt by said defendant corporations to enable the defendant Hydro Electric Corporation to serve electrical energy to defendant Creamery at its business within the Town of Rogersville in competition with complainant, without securing from the Railroad and Public Utilities Commission a certificate of convenience and necessity therefor.

"(4) That said contract of August 8, 1931, between defendant corporations, and their threatened and intended acts and doings thereunder, have not been submitted to and/or approved by the Railroad and Public Utilities Commission of Tennessee.

"(5) The electrical energy furnished, or to be furnished, by the

defendant Hydro Electric Corporation to defendant Creamery can only be served to it, said Creamery, at the place of and in connection with its business in Rogersville, and as and when it is actually used in the operation of its business, at its plant and place of business in Rogersville, where, as it is served and used, it is metered and the amount for which defendant Creamery becomes indebted to defendant Hydro Electric Corporation is determined; and until such energy is actually served to and used by the defendant Creamery in the operation of its business, it is at all times under the control of the defendant Hydro Electric Corporation.''

The assignments in short raise the question of whether the furnishing of electricity by the Hydro Electric Corporation to the Hawkins County Creamery for use in the town of Rogersville is in violation of the decree in cause No. 3107, to which reference has been made previously.

It is said by defendant Hydro Electric Corporation that the injunction issued in cause No. 3107 is not operative or applicable in this case. In other words, that there was nothing involved in that case which would prevent it from furnishing electricity delivered to said creamery at a point outside of the city limits of Rogersville. After investigating the records and carefully considering the issues involved in the original case No. 3107, it is very evident that the object and purpose of the Hawkins County Creamery in entering into the contract with the Hydro Electric Corporation and in building the line to connect with the high-powered line of the Hydro Electric Corporation outside of the town was to avoid the injunction granted in the former cause and to nullify the decision of the case in said former suit, and this to be aided by virtue of the interlocking directorate of the Hawkins County Creamery and the Hydro Electric Corporation.

The contract heretofore referred to was drawn up and signed; we think that this was the device used and put into effect for the purpose of permitting the Hawkins County Creamery to operate in the town of Rogersville upon electrical energy furnished it by the Hydro Electric Corporation, which said corporation was enjoined from doing by positive inhibition of the decree in the former suit. This being true, the court is asked to confirm such an arrangement, the very effect of which is to nullify its former solemn decree. It can be seen that a court of equity, by approving such a subterfuge, would be setting its seal of approval upon the contract between these two parties, and by so doing would avoid and set aside its former holding; we cannot agree with this proposition. We believe that the Hydro Electric Corporation is just as much doing business in the town of Rogersville by furnishing this electrical energy for the purpose of turning the wheels of the creamery located in the town as if it were itself transmitting the energy within the corporate

limits of the town of Rogersville. It is the furnishing of the electrical energy to the creamery company for use in the town of Rogersville that constitutes doing business in the town of Rogersville within the meaning of the decree. To license and affirm an act of this kind for this party would mean that any corporation or individual could do likewise, and by so doing destroy the investment of the complainant, Holston River Electric Company, in the town of Rogersville, notwithstanding the fact that it had been lawfully permitted to make its investments there, and notwithstanding the fact that the Hydro Electric Corporation had been decreed to have no rights to operate in said town. Such a holding would deprive it of its rights and opportunities for earning on its investment. We think that this would certainly be taking private property without due process of law.

It is urged by the able counsel for the defendants that to so construe the authority given the Public Utilities Commission to approve or disapprove grants by municipalities or franchises over their streets is to create a monopoly of the sale of electricity in the town, and would be in violation of the Constitution of Tennessee, article 1, section 22, which is to the effect ''that perpetuities and monopolies are contrary to the genius of a free state and cannot be allowed,'' and furthermore, that to hold that the Hawkins County Creamery was compelled to purchase that commodity from the complainant, Holston River Electric Company, because they happened to have a franchise authorizing it to use the streets, alleys, and public places of the town of Rogersville with its wires and poles, would be contrary to the Constitution, article 1, section 8.

''That no man shall be . . . deprived of his life, liberty, or property, but by the judgment of his peers or the law of the land.'' Const., art. 1, section 8.

To the first objection, we say that the tendency of our courts is, and has been for some time, to hold that, inasmuch as these franchises and rates to be charged by companies exercising said franchises are subject to public control, this is not objectionable and does not create such monopolies as would violate such constitutional provisions. In the Law of Electricity by Curtis, section 30, the following principle of law is laid down:

''Inasmuch as electrical companies are quasi-public corporations whose rates for supplies of electrical energy are subject to state and municipal control the restriction of competition between two or more of such companies is viewed with the alarm which attends a monopolistic arrangement between corporations whose charges are not subject to government revision.''

The same learned authority holds that under the police powers of the state practically every matter in relation to the use of the streets, alleys, construction of the lines, transmission of electricity,

and control of the same may be regulated by the state authorities. If, as said by the defendants in its answers, the rates at one time were too high, then that is a matter in which opportunity is given for regulation by the Public Utilities Commission of the state and, on appeal, by the courts. These companies, as stated, are quasi public corporations, and hence subject to' state control. See sections 329, 326, 334, of the Law of Electricity by Curtis, supra.

In the case of Great Falls Power Company v. Webb, 123 Tenn., 597, 133 S. W., 1105, 1109, our own Supreme Court, speaking through Judge Green, has held that:

" 'The corporation and its property, being affected by a public use, will be under governmental control, and the Legislature may at any time fix rates and make more specific the duties clearly implied from the act of incorporation. Munn v. Illinois, 94 U. S., 113, 24 L. Ed., 77; Budd v. New York, 143 U. S., 517, 12 S. Ct., 468, 36 L. Ed., 247; Brass v. North Dakota, 153 U. S., 391, 14 S. Ct., 857, 38 L. Ed., 757.'

"To the same effect see Crumley v. Watauga Water Company, 99 Tenn., 420, 41 S. W., 1058, and Watauga Water Company v. Wolfe, 99 Tenn., 429, 41 S. W., 1060, 63 Am. St. Rep., 841."

Again it is said by Mr. Pond, in his most excellent work on Public Utilities, in speaking of the right of the state to regulate by commissions such quasi public corporations, that:

"It provided for a regulation and control which was intended to prevent on the one hand the evils of an unrestricted right of competition and on the other hand the abuses of monopoly."

It would seem that under the record in the case the Creamery company and the Hydro Electric Corporation really lose nothing by being enjoined in this case because it is said the rates paid to one company are the same as to the other or substantially so. Then upon what ground—if their own theories are correct—can they say that their rights are seriously affected by the issuance of the injunction in this and in the former case? Again, if their rights are affected, then, like every other citizen, they must submit to the control of such matters by the Public Utilities Commissions, for the rights of parties thereunder are regulated by such commissions and the law of Tennessee.

We are cited by the defendants to the case of Memphis Street Ry. Co. v. Rapid Transit Company, 133 Tenn., 99, 179 S. W., 635, L. R. A., 1916B, 1143, Ann. Cas., 1917C, 1045, as an authority sustaining their contentions. Upon reading this case however, we find little, if anything, therein to sustain such contentions. Quoting from Judge Green's opinion in that case, we note the following principle laid down:

"When a business may not be conducted as a matter of common right, but legislative authority is necessary, such authority, when

conferred, is exclusive against all persons not endowed with like authority. Such rights, so bestowed by law, may not be infringed, except by authority of the state, and will be protected by injunction against unlawful invasion.

"As a matter of course, the observation just made is only applicable to clear cases, as the case before us. If the franchise or license of a complainant was doubtful, an injunction would not be awarded to protect it, nor could the validity of a license or franchise possessed by a competing defendant be questioned, and its exercise restrained, in proceedings of this character. Geneva-Seneca Electric Co. v. Economic Power & Const. Co., 136 App. Div., 219, 120 N. Y. S., 926; Coffeyville Min. & Gas Co. v. Citizens' Natural Gas & Min. Co., 55 Kan., 173, 40 Pac., 326; Market St. Ry. Co. v. Central Ry. Co., 51 Cal., 583. We are in full accord with the views expressed in these and like cases. Questions upon the regularity of a charter, the validity of a franchise, and the like, are to be determined upon suit of the attorney general or other constituted authority, and not on suit of a competing corporation.

"In the case at bar, however, defendants make no claim to any license or franchise, although such license is a statutory prerequisite to the pursuit of defendants' business. The validity of complainant's franchise, on the other hand, is not impeached." 133 Tenn., 114, 115, 179 S. W., 635, 639, L. R. A., 1916B, 1143, Ann. Cas., 1917C, 1045.

In the brief of the appellees one of the reasons advanced to show that the furnishing of the electrical energy to the Creamery company does not constitute carrying on business in Rogersville is that, since the energy is metered outside of the town and not in the town, the handling of the current in this way is not doing business in Rogersville; if this is the correct view, then it may be said that the company from which the Hydro Electric Corporation buys its electricity would be doing business in the town of Rogersville. We say this is not the case at bar, and this reasoning advanced by the defendants' attorneys is not in harmony with the contract in question itself, for the contract states in substance that the Creamery company should not sell the current to any resident of Rogersville.

▇▇ We do not think that the place of delivery of the current is the controlling point in the case. In our judgment, the controlling point is, where and for what purpose is the electrical energy to be used? If it is to be used in the town of Rogersville by parties that otherwise would have to buy it from the company which has the franchise, and whose rates are approved by the state authorities, then under the franchise granted to the Holston River Electric Company would this last company not be entitled to this business? We think that it would, and to deprive it of the business means, to lessen the value of its franchise, and lessen the value of

its investments in the town of Rogersville. As before intimated, if this policy of interference were pursued to any considerable extent, it would destroy the business of the complainant. Then, again, it does not appear from the record that the contract between defendant Hydro Electric Corporation and the Creamery company was ever approved or ratified, or, as far as that is concerned, ever submitted to the Public Utilities Commission of Tennessee for approval. In our judgment, such approval is necessary under the law. The regulation of rates charged by the Public Utilities in the state is one of the proper functions and duties of the Railroad and Public Utilities Commission. If such were not the case, what is there to prevent the Hydro Electric Corporation from charging a greater or less rate for furnishing this energy for use in the town of Rogersville than that permitted by the law? The power and authority of the Public Utilities Commission of Tennessee to regulate such rates has upon several occasions been upheld by our Supreme Court. The right to regulate such rates is expressly declared, approved, and reiterated in the case of Franklin Light & Power Company v. Southern Cities Power Company, 164 Tenn., 171, 47 S. W. (2d), 86.

Our courts have held, in deciding a question very similar to this in relation to the transmission of natural gas, that, while the thing which the state commission has undertaken to regulate as a part of an interstate transmission is local in its nature and pertains to the furnishing of natural gas to local consumers within the city of Jamestown in the state of New York, "the pipes which reach the customers served are supplied with gas directly from the main of the company which brings it into the state, nevertheless the service rendered is essentially local, and the sale of gas is by the company to local consumers who are reached by the use of the streets of the city in which the pipes are laid, and through which the gas is conducted to factories and residences as it is required for use. The service is similar to that of a local plant furnishing gas to consumers in a city. . . . While the manner in which the business is conducted is part of interstate commerce, its regulation in the distribution of gas to the local consumers is required in the public interest and has not been attempted under the superior authority of Congress." The Supreme Court of the United States then proceeds to decide that the state has authority for making local regulations of a reasonable character. Pennsylvania Gas Co. v. Public Service Commission, 252 U. S., 23, 40 S. Ct., 279, 281, 64 L. Ed., 443.

Again, it is urged by counsel for defendants that, because electrical energy is delivered outside of the town of Rogersville and then transmitted into this town over a wire belonging to the creamery, its constitutional rights would be invaded and violated if such a contract were set aside by enforcing the injunctions heretofore issued in this and in the original cause. We cannot see how this

136

question can be raised in this suit. As we view it, this was really disposed of in the former suit where it was adjudicated that the Hydro Electric Corporation had no franchise to do business in Rogersville, and as a consequence was enjoined from so doing.

It is admitted in the answers filed in this case that the private line belonging to the Hawkins County Creamery crosses or will cross one of the public streets within the corporate limits of the town of Rogersville, but it is said that the private line when constructed will be suspended above the street and will not interfere with the public use of the street. Again, it is said that complainant has no right to question the act of the defendant in crossing said street. We cannot agree with this contention. If the private line constructed had the right to cross one street, then likewise it would have a right to cross any and all streets in the town. If it has this right to cross over the street, then it has the right to cross underneath the street, and, as before stated, it is admitted that neither the Hydro Electric Corporation nor the creamery has any franchise from the city to so use said street or streets, and such a franchise is unnecessary to the legal use of such streets and alleys and for the protection of the investment of complainant company made in the town of Rogersville by virtue of the franchise granted to said company.

There are several other matters raised in the brief of appellees which are not discussed in this opinion because we do not consider them pertinent to the facts or the law of this case, and for the further reason that, in view of the conclusion arrived at, we do not deem it necessary to dispose of them.

As a result of our conclusions, the decision of the chancellor below in dismissing complainant's bill and dissolving the injunction is reversed, and relief will be granted the complainant as prayed in its bill, and the injunction will be reinstated. Costs of the cause will be paid by the appellees.

Portrum and Thompson, JJ., concur.